# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 1:25-cv-469

NUTRIEN AG SOLUTIONS, INC.,

    Plaintiff,

v.

MEHERRIN AGRICULTURAL
& CHEMICAL COMPANY, and
WILLIAM PATRICK TAYLOR,

    Defendants.

COMPLAINT

JURY TRIAL DEMANDED

  Plaintiff Nutrien Ag Solutions, Inc. ("Nutrien") brings this Complaint against Defendants Meherrin Agricultural & Chemical Company ("Meherrin") and William Patrick Taylor ("Taylor," and collectively with Meherrin, referred to as "Defendants") and alleges as follows:

## THE PARTIES

  1. Plaintiff Nutrien is a Delaware corporation with its principal place of business at 3005 Rocky Mountain Avenue, Loveland, Colorado 80538. Nutrien operates close to 40 retail locations in North Carolina.

  2. Nutrien is informed and believes that Defendant Meherrin is a North Carolina corporation with its principal place of business in Severn, North Carolina.

  3. Meherrin is a competitor of Nutrien with over a dozen locations in North Carolina.

4.     Nutrien is informed and believes that Defendant Taylor is an individual who resides in Oakboro, North Carolina.

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Meherrin because, on information and belief, Meherrin was formed under the laws of North Carolina and because Meherrin's principal place of business and home office is located in Severn, North Carolina.

6.     This Court has personal jurisdiction over Taylor because, on information and belief, he resides in Oakboro, North Carolina and because he has frequent, continuous, and systematic contacts with North Carolina in that he lives and works in North Carolina.

7.     The Court has subject matter jurisdiction over this case because Nutrien alleges a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(c), which arises under the laws of the United States. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Nutrien's state-law claims because they arise from a common nucleus of operative facts and the same case or controversy as Nutrien's claim under the DTSA. 28 U.S.C. § 1367(a).

8.     The Court also has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the parties are citizens of different states—Nutrien is a citizen of

Delaware and Colorado, and Taylor and Meherrin are citizens of North Carolina—and the amount in controversy exceeds $75,000.

9. Venue is proper in this District under 28 U.S.C. Section 1391, including because all Defendants are residents of the state and at least one Defendant (Taylor) resides in this District, and a substantial part of the events giving rise to the claims occurred in this District. *See* 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### A. Nutrien's Trade Secrets and Confidential Business Information

10. Nutrien is the retail division of Nutrien® Ltd., a crop inputs company. Nutrien provides agricultural products and services to growers through a network of trusted crop consultants. Nutrien helps growers maximize their crop yields using customized solutions and a wide selection of products, including seed, nutrition, and crop protection. Nutrien offers both proprietary products that promote plant health and sophisticated tools that improve overall operational efficiency.

11. Nutrien uses confidential and proprietary business information, as well as information developed through years of research and development, breeding programs, and customized methods and products for crop nutrition and protection. Nutrien has developed various products, techniques, strategies, methodologies, lists, and other confidential documents and information (the "Confidential Information") over a period of many years through significant effort, goodwill, research, and expense to the company.

12. Nutrien's Confidential Information is not sold or given to third parties. Nutrien also protects the confidentiality of its Confidential Information, including by limiting access to those employees who need the information to perform their duties, requiring password protection, training employees on the need to protect confidentiality, requiring employees with access to such information to agree not to use Nutrien's Confidential Information for personal gain, and requiring employees to not use or disclose any of Nutrien's Confidential Information except for the benefit of the company during or after their employment with Nutrien.

13. Nutrien's Confidential Information includes trade secrets that Nutrien keeps secret and that have value because they are not publicly known and not readily ascertainable by Nutrien's competitors.

**B.     Nutrien's Employment of Taylor**

14. Taylor was a crop consultant for Nutrien. He started with Nutrien in November 2018. During his employment with Nutrien, Taylor had access to Nutrien's confidential and trade secret information concerning Nutrien's products, techniques, customer lists and pricing, and other sensitive information.

15. In connection with his employment with Nutrien, on November 12, 2018, Taylor entered into a Conflicts of Interest Agreement (the "Conflicts of Interest Agreement"). Pursuant to the Conflicts of Interest Agreement, and as a condition of employment, Taylor agreed, among other things, to avoid conflicts of interest such as

- 4 -

"[a]ny services performed either directly or indirectly, by directive, managerial, or consultative nature for any enterprise or company;" "[a]ny services performed either directly or indirectly for compensation for any enterprise or company that may require the use of [Nutrien] equipment or labor [that] is performed during normal working hours;" and "[d]irect or indirect competition with [Nutrien] . . . in the purchase, sale or lease of rights in real or personal property."

16.     A true and correct copy of the Conflicts of Interest Agreement is attached as **Exhibit A**.

17.     Also in connection with his employment with Nutrien, on November 12, 2018, Taylor entered into Nutrien Employees Agreement Respecting Inventions and Confidential Information (the "Confidentiality Agreement"). Pursuant to the Confidentiality Agreement, and as a condition of employment, Taylor agreed as follows:

> I agree not to use on my own behalf or on behalf of others, nor to publish or divulge to others, during the period of my employment to at any time thereafter, any trade secrets or confidential information, processes, plans, inventions, knowledge or data of [Nutrien] or of any of its subsidiaries, obtained by me as a result of or during my employment, unless authorized in writing to do so by [Nutrien].

18.     A true and correct copy of the Confidentiality Agreement is attached as **Exhibit B**.

- 5 -

19.     On December 18, 2024, Taylor resigned from Nutrien and his employment was terminated that same day.

**C.     Nutrien's Lease of the Millingport Road Property**

20.     For nearly two decades, Nutrien leased property located at 32467 Millingport Road, Albemarle, North Carolina 28001 (the "Millingport Road Property") from Joseph W. Lippard Family, LLC (the "Landlord").

21.     When Nutrien first entered into a lease agreement for the Millingport Road Property, Joseph W. Lippard Family, LLC was owned and operated by Joseph Lippard.

22.     On information and belief, in or around 2015, Joseph Lippard's nephew, Norman Morgan ("Morgan"), took over certain operations of Joseph W. Lippard Family, LLC as it related to the Millingport Road Property.

23.     Throughout the decades of leasing the Millingport Road Property, it was typical for the lease agreements to be for a three-year term.

24.     It was also typical that under the lease agreements, Nutrien was permitted to, "at its own cost and expense and in a good workmanlike manner, make such alterations, additions or improvements or erect, remove or alter such partitions, or erect such racks, shelves, bins, machinery and trade fixtures as it may deem advisable, without the consent of Landlord." *See, e.g.*, **Exhibit C**, at 2 § 7. The leases further provided that "[a]ll alterations, additions, improvements and partitions installed by Tenant on the

- 6 -

Premises as of the Commencement Date shall be and remain the property of Tenant and may be removed or abandoned by Tenant at the expiration of the Term." *See, e.g.*, *id.*

25.     When Nutrien first became a tenant at the Millingport Road Property, the property consisted of a single building that functioned as an office building for Nutrien. Throughout its lease of the Millingport Road Property, Nutrien has made extensive improvements to the property, including adding and expanding buildings and installing specialized storage equipment.

26.     In or around November 2019, Nutrien and Morgan engaged in negotiations regarding renewal of the Millingport Road Property lease agreement. During those negotiations, Nutrien explained to Morgan the improvements Nutrien had made to the Property and that the rent for the Property reflected Nutrien's substantial investment. Morgan acknowledged the improvements Nutrien had made to the premises and, accordingly, agreed to a modest increase in the rent for an additional three-year term from January 1, 2020 through December 31, 2022 (the "2020-2022 Lease Agreement"). A true and correct copy of the 2020-2022 Lease Agreement is attached as **Exhibit C**.

27.     Under the 2020-2022 Lease Agreement, the lease "automatically renew[ed] for successive one (1) year periods for a maximum of one (1) additional renewal term(s), upon the same terms, conditions and Rent. . .." **Exhibit C**, at 1 § 2. In accordance with that provision, the 2020-2022 Lease Agreement was automatically renewed for the 2023

lease period (the "2023 Lease Agreement"), which commenced on January 1, 2023 and continued through December 31, 2023.

28.   In or around November 2023, around the time when the 2023 Lease Agreement was due to expire, Nutrien's internal system alerted certain employees that the Millingport Road Property lease was due for renewal.

29.   Taylor was among the employees who was notified that the Millingport Road Property lease was up for renewal for 2024 through 2027. Ben Hawkinson, the Nutrien Division Manager for North and South Carolina, was not.

30.   On information and belief, Taylor contacted Morgan directly regarding the 2024 through 2027 lease agreement. On information and belief, Taylor told Nutrien's internal team that Morgan requested that the lease be reduced to a one-year lease term as opposed to the previously standard three-year lease term or the automatic one-year renewals provided for in the 2020-2022 Lease Agreement. Nutrien's internal team agreed to the revision, believing that nothing had changed with respect to Nutrien's relationship with Morgan.

31.   On December 27, 2023, Nutrien entered into a new lease agreement (the "2024 Lease Agreement") for the Millingport Road Property for a 1-year term—from January 1, 2024 through December 31, 2024. A true and correct copy of the 2024 Lease Agreement is attached as **Exhibit D**.

32.     Taylor negotiated the 2024 Lease Agreement purportedly on behalf of Nutrien.

33.     In November of 2024, Nutrien invested around $25,000 in further improvements to the Millingport Road Property. Nutrien would not have made these investments had it known that Morgan would cause the lease to be terminated one month later.

34.     On December 12, 2024, Morgan sent Taylor an email stating that Nutrien's lease would not be renewed for 2025, and that the Landlord had signed a lease with Meherrin that will begin January 1, 2025. A true and correct copy of the December 12, 2024 email from Morgan to Taylor is attached as **Exhibit E**.

35.     That same day, Taylor told Hawkinson that Morgan was not renewing the 2024 Lease Agreement, which meant Nutrien's lease for the Millingport Road Property would terminate on December 31, 2024.

36.     Upon learning this information, Hawkinson contacted Morgan by telephone and asked if Nutrien could have more time to remove its property from the Millingport Road Property. On information and belief, Morgan informed Hawkinson that Nutrien would have to ask the new tenant whether Nutrien could have an extension on its lease to give it time to remove its equipment, improvements, and additions from the premises.

37.     Shortly thereafter, Hawkinson received a phone call from Eddie Price, an employee of Meherrin.

- 9 -

38. Price asked Hawkinson why Nutrien needed more time to vacate the premises. Price also asked Hawkinson why Nutrien was removing equipment, improvements, and inventory, given the cost to remove them, suggesting to Hawkinson that Meherrin expected, in giving Nutrien so little time to move, that Meherrin would be able to take over Nutrien's improvements, equipment, and inventory for the benefit of Meherrin's agricultural retail ("ag retail") business.

39. Meherrin did not provide Nutrien with additional time to remove its property and improvements from the premises.

40. Thus, due to the short notice of the termination of the lease, Nutrien had to expend significant costs and effort to remove all of its property, equipment, and improvements from the Millingport Road Property before the lease expired on December 31, 2024.

41. On information and belief, Taylor, Meherrin, and Morgan conspired and colluded to prevent the renewal of Nutrien's lease and to secure the Millingport Road Property for Meherrin, and in the hopes of also acquiring Nutrien equipment and property that Nutrien would not have time to remove by the end of its lease and which would benefit Meherrin's ag retail business.

**D. Defendants' Theft of Nutrien's Confidential Information**

42. During the course of his employment with Nutrien, Taylor had access to Nutrien's Confidential Information concerning, among other things, Nutrien's proprietary

seed products, recommended nutrition and protection, grower management tools, customer lists, pricing strategies, supplier data, business plans, marketing plans, and other sensitive business information.

43. In the days leading up to his resignation, including just hours prior to resigning from Nutrien, Taylor downloaded multiple confidential Nutrien documents to take with him to his new employer, Meherrin.

44. The documents Taylor downloaded contain highly sensitive information and trade secrets concerning nearly every aspect of Nutrien's business, including customer lists, pricing guidelines, sales reports, and quote and order tracking logs.

45. The documents Taylor copied contain highly sensitive Nutrien trade secrets that Taylor planned to use to further his and Meherrin's scheme to steal Nutrien's business and to assist Meherrin, one of Nutrien's competitors, to compete unfairly against Nutrien.

46. The documents Taylor misappropriated are highly confidential and would allow Taylor and Meherrin to duplicate Nutrien's business processes, products, and services unfairly and with little effort.

47. Taylor had no reason to make copies of these documents in the days and hours leading up to his resignation from Nutrien except to use them for his own personal benefit and for the benefit of his new employer, Meherrin.

48.     Taylor is now employed by Meherrin doing the same type of work he performed for Nutrien.

49.     On information and belief, Taylor is now using the confidential documents he took from Nutrien, and the information they contain, for his own benefit and for the benefit of his new employer, Meherrin.

50.     On information and belief, Meherrin knew Taylor took Confidential Information when he left Nutrien and has not acted to avoid or prevent the use of Nutrien's Confidential Information at Meherrin.

51.     Six days before resigning from Nutrien, Taylor downloaded a copy of a Nutrien spreadsheet entitled "2025 Default Price List and Info.xlsx." That spreadsheet contains the pricing information for all of Nutrien's customers at the Millingport branch for 2025. Nutrien is informed and believes that Meherrin has contacted at least one customer on that list, a customer with whom Meherrin had not previously done business, and Meherrin offered pricing to that customer that undercut Nutrien's pricing. As a result, Nutrien had to discount its pricing in order to retain the customer, resulting in a loss to Nutrien.

52.     On December 27, 2024, eight other Nutrien employees—all of the remaining Nutrien employees at the Millingport branch—resigned from Nutrien.

53.     On information and belief, seven of those employees are now working for Meherrin doing the same type of work they were performing for Nutrien. An eighth

employee is currently on medical leave but plans to join Meherrin once he returns to work.

54.     On information and belief, Taylor and Meherrin orchestrated the departure of these eight employees from Nutrien to Meherrin.

55.     On April 3, 2025, Nutrien sent Meherrin a letter warning Meherrin not to use Nutrien's trade secrets and proprietary information and asking Meherrin to identify all Nutrien documents and information it received from Taylor regarding Nutrien's business. Attached as **Exhibit F** is a copy of Nutrien's April 3, 2025 letter.

56.     On April 9, 2025, Nutrien sent Taylor a letter reminding him of his obligations not to use or disclose Nutrien's Confidential Information and asking Taylor to confirm that he had returned and not kept any Nutrien property, including any Nutrien documents and Confidential Information. Attached as **Exhibit G** is a copy of Nutrien's April 9, 2025 letter.

57.     While Meherrin and Taylor have responded to Nutrien's letters, purporting to confirm they will not use any Nutrien Confidential Information and that all such Information has been returned or destroyed, considerable damage has already been done, and continues, and Nutrien is not confident that Taylor will in fact abide by any commitment he makes.

58.     Taylor also took active steps to destroy Nutrien property and hide his misconduct.

59.     Taylor initiated a factory reset for two Nutrien devices in his possession—a Nutrien iPhone and a Nutrien iPad—before returning them to Nutrien. By doing so, Taylor wiped these devices clean of all information and made the recovery of any Nutrien information from these devices impossible.

60.     Taylor's unlawful conduct, misappropriation of Nutrien's Confidential Information, and intentional efforts to conceal his misconduct have caused substantial irreparable harm to Nutrien, which will continue until Taylor identifies, returns, and ceases using Nutrien's Confidential Information.

## COUNT I: BREACH OF CONTRACT

### (Against Taylor)

61.     Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

62.     The agreements executed by Taylor, including the Conflicts of Interest Agreement and Confidentiality Agreement (collectively, the "Employment Agreements"), all in exchange for employment with Nutrien, are valid and enforceable contracts that are binding on Taylor.

63.     Pursuant to the Conflicts of Interest Agreement, Taylor agreed, among other things, to avoid conflicts of interest such as "[a]ny services performed either directly or indirectly, by directive, managerial, or consultative nature for any enterprise or company;" "[a]ny services performed either directly or indirectly for compensation for

- 14 -

any enterprise or company that may require the use of [Nutrien] equipment or labor [that] is performed during normal working hours;" and "*[d]irect or indirect competition with [Nutrien] . . . in the purchase, sale or lease of rights in real or personal property*." **Exhibit A** (emphasis added).

64.     Pursuant to the Confidentiality Agreement, Taylor agreed "not to use on [his] own behalf or on behalf of others, nor to publish or divulge to others, during the period of [his] employment to at any time thereafter, any trade secrets or confidential information, processes, plans, inventions, knowledge or data of [Nutrien] or of any of its subsidiaries, obtained by [him] as a result of or during [his] employment, unless authorized in writing to do so by [Nutrien]." **Exhibit B**.

65.     Nutrien performed its obligations under the Employment Agreements by continuing to employ Taylor.

66.     Taylor breached his obligations under the Conflicts of Interest Agreement including by colluding with Morgan and Meherrin to prevent the renewal of Nutrien's lease and to secure the Millingport Road Property for Meherrin.

67.     Taylor breached his obligations under the Confidentiality Agreement including by using and disclosing Nutrien's Confidential Information for his own personal benefit and for the benefit of third-party Meherrin, by intentionally destroying Nutrien information and property, and by attempting to conceal his misconduct.

- 15 -

68.     As a result of Taylor's breaches of the Employment Agreements, Nutrien has suffered and continues to suffer damages in an amount to be proven at trial.

69.     In addition, as a result of Taylor's breaches of the Employment Agreements, Nutrien has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized use and disclosure of Nutrien's Confidential Information and harm to Nutrien's goodwill and business reputation.

## COUNT II: VIOLATION OF THE DEFEND TRADE SECRETS ACT

## 18 U.S.C. § 1831, *et. seq.*

## (Against Taylor & Meherrin)

70.     Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

71.     Nutrien is the owner of trade secrets, including without limitation the Confidential Information described above.

72.     Nutrien exerted great efforts to develop and protect the confidentiality of its Confidential Information, including by limiting access, requiring password protection, implementing mandatory training, and requiring and reminding employees not to use or disclose Nutrien's Confidential Information except for the benefit of the company during or after their employment.

- 16 -

73.     Nutrien derives independent economic value from its trade secrets because they are not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Among other things, Nutrien's trade secrets allow Nutrien to provide competitive, effective, and efficient high-quality products and services to its customers nationwide, to maintain mutually beneficial long-term employee, customer, and supplier relationships, and to build a productive and effective sales team.

74.     Defendants have misappropriated Nutrien's trade secrets, including by copying, disclosing, and using, without Nutrien's consent, Nutrien's Confidential Information for Meherrin's use and benefit and for Taylor's own personal use and benefit.

75.     At the time of the disclosure of Nutrien's trade secrets to Meherrin, Defendants knew or had reason to know that the trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

76.     The trade secrets that Defendants have misappropriated are directly related to Nutrien's products and services, which Nutrien sells nationwide as part of interstate commerce.

77.     As a result of Defendants' misappropriation of Nutrien's trade secrets, Nutrien has suffered and continues to suffer damages in an amount to be proven at trial.

78.     On information and belief, Defendants continue to utilize Nutrien's trade secrets obtained through their misappropriation for their own economic benefit, including by undercutting Nutrien's pricing to steal Nutrien's customers.

79.     Defendants willfully and maliciously misappropriated Nutrien's trade secrets. Accordingly, Nutrien is entitled to recover exemplary damages and attorneys' fees in an amount to be determined at trial. *See* 8 U.S.C. §§ 1836(b)(3)(C)-(D).

80.     In addition, as a result of Defendants' misappropriation of Nutrien's trade secrets, Nutrien has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized copying, use, and disclosure of Nutrien's trade secrets and harm to Nutrien's goodwill and business reputation.

**COUNT III: VIOLATION OF N.C. TRADE SECRETS PROTECTION ACT**

**N.C. Gen. Stat. § 66-152, *et seq.***

**(Against Taylor & Meherrin)**

81.     Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

82.     Nutrien is the owner of trade secrets, including without limitation the Confidential Information described above.

83.     Nutrien exerted great efforts to develop and protect the confidentiality of its Confidential Information, including by limiting access, requiring password protection,

- 18 -

implementing mandatory training, and requiring and reminding employees not to use or disclose Nutrien's Confidential Information except for the benefit of the company during or after their employment.

84. Nutrien derives independent economic value from its trade secrets because they are not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Among other things, Nutrien's trade secrets allow Nutrien to build a productive and effective sales team, to provide competitive, effective, and efficient high-quality products and services to its customers nationwide, and to maintain mutually beneficial long-term employee, customer, and supplier relationships.

85. Defendants have misappropriated Nutrien's trade secrets, including by copying, disclosing, and using, without Nutrien's consent, Nutrien's Confidential Information for Meherrin's use and benefit and for Taylor's own personal use and benefit.

86. At the time of Taylor's disclosure of Nutrien's trade secrets to Meherrin, Defendants knew or had reason to know the trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

87. As a result of Defendants' misappropriation of Nutrien's trade secrets, Nutrien has suffered and continues to suffer damages in an amount to be proven at trial.

88.     On information and belief, Defendants willfully and maliciously misappropriated Nutrien's trade secrets. Accordingly, Nutrien is entitled to recover punitive damages in an amount to be determined at trial.

89.     In addition, as a result of Defendants' misappropriation of Nutrien's trade secrets, Nutrien has and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized use and disclosure of Nutrien's trade secrets and harm to Nutrien's goodwill and business reputation.

### COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – EMPLOYEE AGREEMENTS

**(Against Meherrin)**

90.     Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

91.     The Employment Agreements between Nutrien and Taylor are valid contracts that confer certain rights and obligations as between Nutrien and Taylor.

92.     On information and belief, at all times relevant to the allegations of this Complaint, Meherrin was aware that the Employment Agreements existed between Nutrien and Taylor.

93.     Upon information and belief, Meherrin intentionally induced Taylor to breach the Employment Agreements and otherwise fail to perform his obligations under the Employment Agreements, including by inducing him to engage in actions for the

benefit of Meherrin, such as breaching his conflicts of interest and confidentiality obligations under the Employment Agreements so as to secure the lease to the Millingport Road Property for Meherrin. Meherrin's intentional inducement of Taylor to breach the Employment Agreements and otherwise fail to perform his obligations under the Employment Agreements was wrongful and without justification.

94.     Meherrin's intentional inducement of Taylor to breach the Employment Agreements and otherwise fail to perform his obligations under the Employment Agreements has resulted in actual damage to Nutrien.

95.     As a direct and proximate result of Meherrin's unjustified and intentional inducement of Taylor to breach or otherwise fail to perform obligations under his valid Employment Agreements, Nutrien has suffered and will continue to suffer irreparable harm and economic damage in an amount to be determined at trial.

96.     On information and belief, Meherrin willfully and maliciously induced Taylor to breach the Employment Agreements. Accordingly, Nutrien is entitled to recover punitive damages in an amount to be determined at trial.

## COUNT V: TORTIOUS INTERFERENCE WITH CURRENT & PROSPECTIVE ECONOMIC ADVANTAGE – CUSTOMER CONTRACTS

### (Against Taylor & Meherrin)

97.     Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

98. Nutrien has invested substantial time, effort and money in developing productive and profitable contractual relationships with its customers and vendors. Defendants had knowledge of these contractual relationships.

99. Nutrien has contractual relationships with its clients and Defendants have wrongfully and tortiously induced those customers to discontinue their contractual relationships with Nutrien and to conduct business instead with Meherrin.

100. Defendants have used improper means to intentionally induce Nutrien's customers to discontinue their contractual relationships without justification, including through their wrongful misappropriation of Nutrien's Confidential Information.

101. Nutrien reasonably expected that, but for Defendants' conduct, its business relationships with its customers would have continued and grown based upon the long-standing and continued relationships Nutrien had with its customers.

102. As a direct and proximate result of this tortious interference, Nutrien has suffered and will continue to suffer irreparable harm and economic damage in an amount to be determined at trial.

103. On information and belief, Meherrin and Taylor willfully and maliciously interfered and continue to interfere with Nutrien's contractual relationships with its customers. Accordingly, Nutrien is entitled to recover punitive damages in an amount to be determined at trial.

## COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACTUAL

## RELATIONS – LEASE AGREEMENT

### (Against Taylor & Meherrin)

104.    Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

105.    Nutrien has had a contractual relationship with the Millingport Road Property Landlord for decades.    Defendants had knowledge of this contractual relationship.

106.    Nutrien invested considerable time and energy in making improvements and alterations to the Millingport Road Property over the years of leasing the property.

107.    Defendants have wrongfully and tortiously induced Morgan to not renew Nutrien's lease of the Millingport Road Property and instead lease the Millingport Road Property to Meherrin.

108.    Defendants have used improper means to intentionally induce the Landlord to discontinue its contractual relationships with Nutrien without justification, including colluding with Morgan to end Nutrien's lease while Taylor was still employed with Nutrien.

109.    Nutrien reasonably expected that but for Defendants' conduct, its contractual relationship with the Landlord would have continued. This is supported by the nearly two-decade long contractual relationship between Nutrien and the Landlord.

110. As a direct and proximate result of this tortious interference, Nutrien has suffered and will continue to suffer irreparable harm and economic damage in an amount to be determined at trial.

111. On information and belief, Meherrin and Taylor willfully and maliciously induced Morgan not to renew Nutrien's lease of the Millingport Road Property. Accordingly, Nutrien is entitled to recover punitive damages in an amount to be determined at trial.

## COUNT VII: UNJUST ENRICHMENT

### (Against Meherrin)

112. Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

113. Defendants obtained Nutrien's Confidential Information through wrongful means.

114. The Confidential Information, which belongs to Nutrien, has a considerable fair market value in that it consists of information such as customer lists, pricing strategies, customer product preferences, and other information that has immense value to any person and entities operating in a business similar to Nutrien.

115. Meherrin obtained the Confidential Information without developing it on its own so as to gain a competitive advantage in furtherance of its own business at the expense of Nutrien.

- 24 -

116. Meherrin's possession and misappropriation of Nutrien's Confidential Information has resulted in an inequity. Meherrin is benefiting unjustly from the time, money, and effort spent by Nutrien over a number of years to create this information and develop relationships with its existing clients and new business with prospective clients. Meherrin's possession and/or misappropriation has allowed Meherrin to step into the shoes of Nutrien, without having to spend the time, money, and effort performed by Nutrien to develop the information, strategies, and relationships at issue.

117. Meherrin has further been unjustly enriched by wrongfully interfering with Nutrien's lease of the Millingport Road Property because Nutrien made substantial improvements to the property, some of which it was not able to remove at the termination of its lease agreement, and Meherrin is obtaining the benefit of those improvements without paying for them.

118. The labor, materials, services, and equipment furnished by Nutrien for the Millingport Road Property has conferred a great benefit on Meherrin, which will now be able to use those improvements for its own benefit.

119. Meherrin should be compelled to return its ill-gotten gains, in an amount to be proven at trial, to Nutrien and should be barred from engaging in any further conduct that would allow Meherrin to be unjustly enriched at Nutrien's expense.

## COUNT VIII: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION

## OF N.C. Gen. Stat. § 75-1.1, *et seq.*

### (Against Taylor)

120.    Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

121.    Pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*, Taylor's conduct as set forth in this Complaint constitutes unfair or deceptive acts or practices in or affecting commerce and/or unfair methods of competition, which have and will continue to damage Nutrien.

122.    As set forth above, Taylor had an ongoing duty to comply with the terms of the Confidentiality Agreement. Taylor violated that ongoing duty by continuing to use and disclose Nutrien's Confidential Information to Meherrin. Taylor's willful violation of the terms of that agreement amounts to egregious activities outside the scope of his employment with Nutrien and affects commerce in violation of N.C. Gen. Stat. § 75-1.1. Such conduct has interrupted and will continue to interrupt the commercial relationship between Nutrien and its customers and has injured and will continue to injure Nutrien's business and goodwill, and will continue to damage Nutrien.

123.    Taylor also had an ongoing duty not to take action to interfere with Nutrien's existing and prospective business relations and his intentional interference with Nutrien's existing and prospective business relations amounts to egregious activities outside the scope of his employment with Nutrien and affects commerce in violation of

N.C. Gen. Stat. § 75-1.1. Such conduct has interrupted and will continue to interrupt the commercial relationship between Nutrien and the Millingport Road Landlord and Nutrien and its customers and has injured and will continue to injure Nutrien's business and goodwill, and will continue to damage Nutrien.

124. Accordingly, pursuant to N.C. Gen. Stat. § 75-1.1 and § 75-16, Nutrien is entitled to recover from Taylor such damages as it may prove at trial and to have those damages trebled. Nutrien is also entitled to recover its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT IX: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.C. Gen. Stat. § 75-1.1, *et seq.*

### (Against Meherrin)

125. Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

126. Pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*, Meherrin's conduct as set forth in this Complaint constitutes unfair or deceptive acts or practices in or affecting commerce and/or unfair methods of competition, which have injured and will continue to damage Nutrien.

127. Meherrin's misappropriation of Nutrien's Confidential Information for its personal gain constitutes unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. Such conduct has interrupted and will continue to interrupt the commercial

- 27 -

relationship between Nutrien and its customers and has injured and will continue to injure Nutrien's business and goodwill, and will continue to damage Nutrien.

128.    Meherrin's intentional interference with Nutrien's existing and prospective business relations constitutes unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. Such conduct has interrupted and will continue to interrupt the commercial relationship between Nutrien and the Millingport Road Landlord and Nutrien and its customers and has injured and will continue to injure Nutrien's business and goodwill, and will continue to damage Nutrien.

129.    Accordingly, pursuant to N.C. Gen. Stat. § 75-1.1 and § 75-16, Nutrien is entitled to recover from Meherrin such damages as it may prove at trial and to have those damages trebled. Nutrien is also entitled to recover its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## COUNT X: COMMON LAW CONSPIRACY

### (Against Taylor & Meherrin)

130.    Nutrien realleges the preceding paragraphs of the Complaint as if set forth herein.

131.    Meherrin and Taylor knowingly entered into an agreement with each other to commit the torts described above, including agreeing to use and disclose to Meherrin Nutrien's Confidential Information as part of a scheme to take business from Nutrien, to obtain the Millingport Road Property and Nutrien's property located thereon for

- 28 -

Meherrin, to assist Meherrin in poaching other Nutrien employees, and to use Nutrien's Confidential Information to further Meherrin's business and harm Nutrien.

132.     Meherrin and Taylor committed several overt acts in furtherance of their conspiracy. For example, while still employed by Nutrien, Taylor met and colluded with the Millingport Road Landlord to improperly enter into a lease on behalf of Meherrin and to then have Nutrien evicted from the location so that Meherrin could take over, and Taylor took Nutrien's Confidential Information with him to Meherrin, where he has used it for his own and Meherrin's benefit.

133.     While Defendants worked with a common plan to achieve these unlawful objectives, each Defendant had an independent personal stake in the conspiracy separate and apart from each other.

134.     As a result of the conspiracy, Nutrien has suffered and continues to suffer damages, in an amount to be proven at trial.

135.     On information and belief, Meherrin and Taylor willfully and maliciously conspired to commit the torts described above against Nutrien. Accordingly, Nutrien is entitled to recover punitive damages in an amount to be determined at trial.

136.     In addition, as a result of the conspiracy, Nutrien has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized use and disclosure of Nutrien's Confidential Information and harm to Nutrien's goodwill and business reputation.

## PRAYER FOR RELIEF

WHEREFORE, Nutrien requests that the Court award it the following relief:

i.      Damages to Nutrien in an amount to be proved at trial;

ii.     Recovery of Defendants' ill-gotten gains and unjust enrichment;

iii.    Treble damages, costs, and attorneys' fees as allowed by law;

iv.    Preliminary Injunctive Relief ordering Defendants to (a) identify all Nutrien property including documents in their possession, custody, and control, (b) identify and produce to Nutrien for forensic examination all computing and other electronic storage devices, including cloud locations, containing confidential Nutrien documents and information, (c) identify and produce to Nutrien all usernames, access codes, PINs, passwords, and other access information for all computing and other electronic storage devices and cloud locations containing confidential Nutrien documents and information, and (d) cease use of and return all confidential and proprietary documents and information to Nutrien;

v.     Preliminary and permanent injunctive relief barring Defendants from using or disclosing Nutrien's trade secrets and confidential information;

vi.    Punitive damages for Defendants' willful and malicious misconduct;

vii.   Prejudgment and post-judgment interest as allowed by law;

viii.  Such other and further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Nutrien demands a trial by jury.

Dated: June 11, 2025

Respectfully submitted,

*/s/ Colin D. Dailey*
Colin D. Dailey
N.C. Bar No. 54408
**BRYAN CAVE LEIGHTON PAISNER LLP**
301 S. College St., Suite 2150
Charlotte, NC 28202
Telephone: 704-749-8950
colin.dailey@bclplaw.com
*Attorneys for Plaintiff*